UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMERICAN BIRD CONSERVANCY, DAVID A. KRAUSS, AND SUSAN SCIOLI, <br><br> Plaintiffs, <br><br> v. <br><br> ROSE HARVEY, Commissioner, New York Office of Parks, Recreation, And Historic Preservation, <br><br> Defendant. | Case No.  16-1582 ADS-AKT |

**AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1.     This Complaint seeks to compel the New York Office of Parks, Recreation, and Historic Preservation to cease violating the Endangered Species Act by authorizing, facilitating, and maintaining feral cat colonies at Jones Beach State Park in close proximity to the nesting sites of Piping Plovers.  The Piping Plovers are protected as "threatened" under the Act, and defendant's facilitation of the feral cats' presence is reasonably certain to cause (if it has not already caused) the imminent "take" of Piping Plovers, in violation of the Act.

**JURISDICTION AND VENUE**

2.     The Court has jurisdiction over this case under 16 U.S.C. § 1540(g) (Endangered Species Act) and 28 U.S.C. § 1331 (federal question).  Venue in this District is proper under 28 U.S.C. § 1391(b)(2) and 16 U.S.C. § 1540(g)(3)(A) because the events giving rise to this suit occurred and are occurring in this judicial district.

## PARTIES

3.     The American Bird Conservancy ("ABC") is a non-profit organization dedicated to the conservation of birds in this Hemisphere, with a strong focus on birds that have been listed as Endangered or Threatened under the Endangered Species Act, 16 U.S.C. § 1531 *et seq.*, ("ESA").  ABC has offices in The Plains, Virginia and Washington, D.C.  ABC and its members and supporters have deep and long-standing interests in the preservation, protection, and recovery of the Piping Plover, interests that are directly harmed by the challenged actions in this case.  ABC's members and supporters regularly visit Jones Beach for the purpose of observing Piping Plovers.  They derive immense recreational, aesthetic, spiritual, and other benefits from watching these birds in their courting, feeding, nesting, and chick-rearing activities.  ABC and its members and supporters' conservation, recreational, aesthetic, and other interests in observing, and in the preservation, protection, and recovery of, Piping Plovers have been, are being, and will continue to be directly injured by the violations of law alleged herein.  ABC and the other Plaintiffs bring this suit under § 11 of the ESA, the citizen-suit provision.  16 U.S.C. § 1540.

4.     David Krauss is an Associate Professor of Science at the Borough of Manhattan Community College ("BMCC") of the City University of New York.  He resides in Manhattan. He leads BMCC student field trips into New York City parks, exploring biodiversity and the parks' role in the urban setting. He has been birding in the New York City area since 1981, and has been birding at Jones Beach since 1983.  He is currently studying the foraging behavior of migratory birds, including Plovers, in urban settings as compared to non-urban settings.

5.     Mr. Krauss has been observing Piping Plovers at Jones Beach State Park for many years.  He is an Empire State Pass holder, visits Jones Beach 15-20 times per year, and uses Jones Beach as a control site for his studies on migratory bird behavior.  Mr. Krauss is especially interested in observing the nesting activities of the Plovers and the fledging of the Plover chicks.

He is aware that Piping Plovers are listed as Threatened under the federal Endangered Species Act and as Endangered under the New York State Endangered Species Act. He is a member of ABC and strongly supports its efforts to protect birds, especially those listed as Threatened or Endangered under the federal statute.

6.  Mr. Krauss is aware of the presence of feral cat colonies that are maintained in Park property nearby the Piping Plover nesting sites. He is deeply concerned that these cats are preying and will prey on the Piping Plovers and otherwise disrupt their breeding efforts. His academic, recreational, aesthetic, and other conservation interests in observing Piping Plovers at their nesting sites at Jones Beach State Park are and will be gravely impaired by the predation of feral cats on the Plovers, and indeed by the very presence of the feral cats, which by itself can discourage the Plovers from nesting at Jones Beach. Seeing the Plovers (both adults and chicks) chased and/or injured and/or killed by the cats, or even seeing the aftermath of attacks, such as Plover carcasses, would cause him grievous aesthetic harm.

7.  Susan Scioli resides in Brooklyn, New York. She has been a member of ABC since 2001 and has served on its Advisory Council. She has been observing Piping Plovers at Jones Beach State Park for many years. She regularly visits the Park to watch birds in general and Piping Plovers in particular. She is especially interested in observing the nesting activities of the Plovers and the fledging of the Plover chicks. She is aware that Piping Plovers are listed as Threatened under the federal Endangered Species Act and as Endangered under the New York State Endangered Species Act. She strongly supports ABC's efforts to protect birds, especially those listed as Threatened or Endangered under the federal statute.

8.  Ms. Scioli is aware of the presence of feral cat colonies that are maintained in Park property nearby the Piping Plover nesting sites. She is deeply concerned that these cats are

preying and will prey on the Piping Plovers and otherwise disrupt their breeding efforts. Her recreational, aesthetic, and other conservation interests in observing Piping Plovers at their nesting sites at Jones Beach State Park are and will be gravely impaired by the predation of feral cats on the Plovers, and indeed by the very presence of the feral cats, which by itself can discourage the Plovers from nesting at Jones Beach.

9. Rose Harvey is the Commissioner of the New York Office of Parks, Recreation, and Historic Preservation ("the Parks Office"). Plaintiffs sue her in her official capacity only.

## STATEMENT OF FACTS

### Statutory and Regulatory Background

10. Congress enacted the ESA to ensure that "the ecosystems upon which endangered and threatened species depend may be conserved, [and] to provide a program for the conservation of such endangered species and threatened species." 16 U.S.C. § 1531. The ESA defines "conservation" to mean the use of "all methods and procedures which are necessary to bring any endangered species or threatened species to the point at which the measures provided [by the ESA] are no longer necessary." *Id.* § 1532(3). The Act reflects "an explicit congressional decision to afford first priority to the declared national policy of saving endangered species." *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 185 (1978).

11. Section 9 of the ESA prohibits any "person" from "taking" any member of an endangered species. 16 U.S.C. § 1538(a)(1); *see also* 50 C.F.R. §§ 17.21, 17.31. The term "person" includes any "officer, employee, agent, department, or instrumentality of * * * any State." 16 U.S.C. § 1532(13). Hence Rose Harvey and the Parks Office are "person[s]" covered by the Act.

12. The term "take" includes "every conceivable way" in which anyone could harm or kill protected species. S. Rep. No. 307, 93rd Cong., 1st Sess., reprinted in 1973 U.S.C.C.A.N.

4

2989, 2995).  Hence the Act defines "take" broadly to mean any actions that "harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or attempt to engage in any such conduct."  *Id.* § 1532(19).

13. The U.S. Fish and Wildlife Service ("F&WS") has defined "harass" to include "an intentional or negligent act or omission *which creates the likelihood of injury* to wildlife by annoying it to such an extent as to significantly disrupt normal behavioral patterns, including breeding, feeding, or sheltering."  50 C.F.R. § 17.3 (emphasis added).

14. The term "harm" is defined to "include significant habitat modification or degradation where it actually kills or injures wildlife by significantly impairing essential behavioral patterns, including breeding, feeding or sheltering."  *Id.*

15. Piping Plovers were listed under the ESA in 1985 as "endangered" in the Great Lakes Region and "threatened" in the Atlantic Coastal Region.  *See* 50 Fed. Reg. 507-50734 (12/11/85).  (Piping Plovers are also listed as "endangered" under New York's Endangered Species Act.  *See* www.dec.ny.gov/animals/7494.html.)

16. Section 11(g) of the ESA, 16 U.S.C. § 1540(g), requires that anyone contemplating a suit to enforce the Act provide the prospective defendant with a Notice of Intent to sue at least 60 days before a complaint may be filed.  ABC gave the Parks Office its Notice under § 11(g) on December 1, 2015.

### Feral Cats Kill Billions of Birds in the US Every Year

17. Feral cats are a non-native species that have contributed to the extinction of 33 other species.  The International Union for the Conservation of Nature lists cats among the worst invasive species globally, and the U.S. Department of Interior's State of the Birds 2014 Report cited outdoor cats as the number one source of direct, human-caused mortality for birds.

5

Outdoor cats kill approximately 2.4 billion birds every year in the United States, and individual unowned cats on average kill from 20.7 birds to 55.2 birds per year.

18. Feeding cats does not eliminate their instinctive hunting behavior. On the contrary, well-fed cats regularly hunt and kill birds.

19. The mere presence of cats can cause behavioral changes in birds that reduce fecundity and may cause significant adverse effects on bird populations. Thus, even when cats do not directly kill wildlife, their presence likely results in a significant reduction in the feeding of nesting chicks and an increased likelihood of nest failure by an order of magnitude.

### Feral Cats Are a Recognized Threat To Piping Plovers

20. The F&WS has concluded that failure to control domestic and feral cats are likely to jeopardize the continued existence of the Atlantic Coast population. The Service's 2009 "5-year Review: Summary and Evaluation," identifies feral cats as a threat to Piping Plovers in the Atlantic Coast range.

21. The Review states that "[f]ree-roaming domestic and feral cats, particularly those associated with human-subsidized feral cat colonies, appear to be an increasing threat to piping plovers and other beach-nesting birds * * *. Efforts by advocacy groups to institute legal prohibitions on trapping and removing feral cats (Longcore et al. 2009), even at sites where they pose a significant threat to imperiled native wildlife, are an example of a potential regulatory threat that could substantially adversely affect breeding piping plovers."

22. The F&WS has also recognized that Piping Plovers are especially vulnerable to feral cats, for two reasons. First, adult Plovers often feign a broken wing to distract predators away from their nests and chicks, flying away at the last minute. A Plover may be unable to escape from a feral cat, however, which is a nonnative predator that is more agile than those that are native to Plovers' natural environment. Second, Plover chicks are precocial, meaning that

6

they move around on the beach to feed themselves during the approximately 25 days before they become capable of flight, and this behavior makes them highly vulnerable to cat predation during this time.

23. Cat predation can have a substantial impact on the ultimate viability of the species: according to the F&WS Review, "Piping plover populations are inherently vulnerable to even small declines in their most sensitive vital rates, survival of adults and fledged juveniles."

24. The F&WS has also said that, with the Plovers' low population numbers, each tiny chick embodies a precious hope for the future recovery of the species.

**Feral Cats Threaten the Jones Beach Plovers**

25. Jones Beach State Park ("Jones Beach") is located on a barrier island within Nassau County. It is under the Parks Office's jurisdiction and is an important refuge for a variety of fish and wildlife. According to the website of the New York State Department of Environmental Conservation, the area is both a stopover site for "a wide variety of migrating songbirds and shorebirds" and a nesting site in the summer for Piping Plovers.

26. At least two feral cat colonies exist at Jones Beach.

27. Data collected as part of the June 2015 Long Island Colonial Waterbird and Piping Plover Survey show that feral cats have consistently been observed near important Piping Plover nesting areas at Jones Beach. The June 2014 survey documented feral cats present at every nesting location. The 2013 survey for Jones Beach Island West noted both the presence of cats and that people are feeding them. The risks posed by the cats is demonstrated by the positive effect of their removal: the number of Piping Plover chicks fledged on Long Island increased with the number of feral cats trapped.

28. According to the Parks Office, the closest feral cat colonies to the 2014 Piping Plover nests are approximately 0.25 miles (West Bathhouse) and 0.65 miles (Field #10). The

7

observation of cats during Piping Plover surveys at both Jones Beach Island East and Jones Beach Island West locations makes it reasonably certain that the cats are traveling from the colony sites to the nest sites.

29.     That observation-based conclusion is confirmed by studies on the roaming distances for feral cats.  One study showed that the mean home range sizes for ten feral cats was nearly 3 miles for females and 5.47 miles for males.  The maximum distance travelled by any cat was 3.74 miles/day.  Another study recorded adult females moving 1.18 to 3.97 miles, and adult males moving 2.95 to 8.65 miles.

**The Parks Office Has Recognized the Threats to Plovers from Feral Cats**

30.     The feral cat colonies at Jones Beach are encouraged and accommodated by a series of structures that the Parks Office has permitted to be built and by routine feeding by local residents, which the Parks Office also permits.  The Parks Office has long authorized these activities despite the nearby presence of the protected Piping Plovers and despite the Parks Office's longstanding recognition of the threat to Piping Plovers posed by feral cats, in general and in particular at the Jones Beach State Park.

31.     The Parks Office's "Guidelines for Feral Cat Control in State Parks" states in part E: "Feral Cats, whether in colonies or solitary, represent a significant concern when in proximity to the threatened and endangered species such as nesting areas of species at risk (*e.g.*, Piping Plovers)."

32.     In a March 17, 2015, letter to ABC, the Parks Office acknowledged the presence of feral cats at Jones Beach and agreed that "our goal should be the removal of feral cats within New York State Parks." The Parks Office further admitted that there is a "possibility of [feral cats] harming endangered and threatened wildlife particularly the Piping Plover and Least Terns."  The letter also said that the Parks Office planned to "perform an analysis of the feral cat

8

population within Jones Beach and to begin the removal of these cat shelters and feeding stations," and "where appropriate remove these feral cats in a humane way."

### The Parks Office Facilitates the Feral Cat Colonies At Jones Beach

33. The Parks Office has taken no effective action to remove the cats.

34. The feral cat population at Jones Beach is basically unchanged since the Parks Office wrote its March 17, 2015 letter to ABC.

35. The Parks Office has effectively authorized the creation of structures to house the Jones Beach feral cat colonies.

36. The Parks Office effectively authorizes people to come on to Park property every day to feed the feral cats.

37. Upon information and belief, the Parks Office knows the identity of specific individuals who are engaged in the sheltering and feeding of the feral cats, yet continues to grant them access to the Park, knowing that they intend to engage in conduct that places the Piping Plovers at risk.

38. The Parks Office is the only entity authorized to remove the feral cats from Jones Beach, and the only entity authorized to control access of members of the public to the area to build shelters and/or feed feral cats.

39. The Parks Office exerts control over the cats since it countenances, facilitates, and effectively authorizes their presence.

40. The Parks Office is effectively maintaining the cats on Park property.

41. On information and belief, building shelters for feral cats and feeding feral cats on Park property violates applicable Park Office rules, regulations, and/or policy, including the Parks Office's "Mission Statement and Guiding Principles," adopted in 1992 and reaffirmed in 2014, and the Statewide Comprehensive Outdoor Recreation Plan 2014-2019 (adopted by the

9

Parks Office under Article 8 of the Environmental Conservation Law and 6 NYCRR Part 617). Through its long-standing non-enforcement policy and practice, the Parks Office has affirmatively authorized the building and continued presence of structures to house the feral cats and the feeding of the feral cats on Park property.

**FIRST CAUSE OF ACTION**

**(VIOLATION OF THE ENDANGERED SPECIES ACT)**

42. The ESA applies to the Parks Office because it covers all "persons," which is defined to include any "officer, employee, agent, department, or instrumentality of * * * any State." 16 U.S.C. § 1532(13).

43. The ESA forbids the "take" of a protected species, defining "take" to mean any actions that "harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or attempt to engage in any such conduct." *Id.* § 1532(19). The term "harass" means "an intentional or negligent act or omission which creates the likelihood of injury to wildlife by annoying it to such an extent as to significantly disrupt normal behavioral patterns, including breeding, feeding, or sheltering." 50 C.F.R. § 17.3.

44. The Parks Office's tolerance, facilitation, and effective authorization of the feral cats' presence "creates the likelihood of injury to" the Piping Plovers and is reasonably certain to cause (if it has not already caused) the imminent "take" of Piping Plovers.

45. The Park Office's long-standing non-enforcement practice and policy of its relevant rules and regulations is functionally equivalent to issuing permits or licenses to individuals to build structures to house feral cats and to feed feral cats on Park property.

46. The ESA's prohibitions contemplate both the actions of individuals who directly take a species and those of a third party authorized by a governmental agency to engage in activity resulting in a taking. *See* 16 U.S.C. § 1538(g) ("It is unlawful for any person * * * to

10

attempt to commit, solicit another to commit, or cause to be committed, any offense" prohibited by the ESA.).

47. The Parks Office is violating the Act by effectively authorizing the creation of structures to house feral cats, by allowing people to come on to Park land to feed them, and by refusing to remove the cats, which are reasonably certain to take the Piping Plovers by harassing, harming, pursuing, wounding, and killing them.

48. Because the Parks Office is the only entity authorized to remove the feral cats, the Parks Office is exerting control over the cats and is effectively maintaining the cats on Park property.

49. The Parks Office has refused to remove the feral cat colonies to protect nests and unfledged Piping Plover chicks as required by law.

WHEREFORE, Plaintiff respectfully requests that the Court:

1. Declare that the Parks Office has violated and is continuing to violate the ESA;

2. Issue an injunction requiring the Parks Office to cease its authorization and facilitation of conduct that is reasonably certain to lead to the take of protected Piping Plovers at Jones Beach;

3. Issue an injunction requiring the Parks Office to remove the feral cats and their housing from Jones Beach, and to prevent members of the public from acting to re-establish feral cat colonies;

4. Award Plaintiff its reasonable attorneys' fees and costs, including expert witness fees, incurred in pursuing this case; and

5. Grant such other further relief as the Court deems appropriate.

11

June 23, 2016

        Respectfully submitted,

        /s/Jeffrey A. Simes
        Jeffrey A. Simes
        Jordan D. Weiss
        GOODWIN PROCTER LLP
        The New York Times Building
        620 Eighth Avenue
        New York, New York 10018
        Tel.: 212.813.8800
        Fax: 212.355.3333
        Email: jsimes@goodwinprocter.com
                jweiss@goodwinprocter.com

        - and –

        William F. Sheehan
        *(Pro Hac Vice forthcoming)*
        General Counsel
        AMERICAN BIRD CONSERVANCY
        4301 Connecticut Avenue, N.W.
        Washington, D.C. 20008
        Tel.: 301.972.7498
        Email: WSheehan@abcbirds.org

## CERTIFICATE OF SERVICE

  I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

               /s/ Jeffrey A. Simes